IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:21-cv-00145-MR-WCM

| | |
|---|---|
| CLAY CALL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **MEMORANDUM AND** |
| v. ) | **RECOMMENDATION** |
| ) | |
| COMMISSIONER OF THE SOCIAL ) | |
| SECURITY ADMINISTRATION, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This matter is before the Court on the parties' cross Motions for Summary Judgment (Docs. 10, 12), which have been referred to the undersigned pursuant to 28 U.S.C. § 636 for the entry of a recommendation.

## I. Procedural Background

In January of 2018, Plaintiff Clay Call ("Plaintiff") filed an application for disability insurance benefits. Transcript of the Administrative Record ("AR") 291-295. Plaintiff alleges disability beginning on December 28, 2016. The last date on which Plaintiff was insured for purposes of disability insurance benefits was December 31, 2018 (the "date last insured" or "DLI").

On February 22, 2021, following an administrative hearing at which Plaintiff appeared and testified, an Administrative Law Judge ("ALJ") issued

1

an unfavorable decision. AR 7-35. That decision is the Commissioner's final decision for purposes of this action.

## II. The ALJ's Decision

The ALJ found that Plaintiff had the severe impairments of "degenerative disc disease (DDD) of the cervical spine; mild DDD of the lumbar spine; bilateral carpal tunnel syndrome (CTS), diabetes mellitus, chronic obstructive pulmonary disease (COPD), and sinusitis." AR 12. After determining that Plaintiff's impairments did not meet or medically equal one of the listed impairments, the ALJ found that Plaintiff had the residual functional capacity ("RFC"):

> to perform light work…except he could frequently climb stairs and ramps, but never climb ladders, ropes, or scaffolds. He could frequently stoop and occasionally crawl. He should avoid concentrated exposure to hazards such as unprotected heights and unprotected dangerous moving mechanical parts. He should avoid concentrated exposure to pulmonary irritants such as concentrated amounts of dusts, noxious odors, fumes, mists, gases, seasonal allergens, or poorly ventilated workspaces. He should have no work that requires fast movements or an unrestricted range of motion with the neck. He could perform work that involves tasks of a nature that could be learned within a short demonstration period of up to approximately one month. He could occasionally reach overhead with the bilateral upper extremities, and he could frequently perform all other reaching with the bilateral upper extremities. He could frequently handle, finger, and feel with the bilateral upper extremities.

2

AR 20.

Applying this RFC, the ALJ found that from December 28, 2016 (the alleged disability onset date) through December 31, 2018 (the date last insured), Plaintiff had the ability to perform certain jobs that existed in significant numbers in the national economy such that Plaintiff was not disabled. AR 29.

### III. Plaintiff's Allegations of Error

Plaintiff argues that the ALJ failed to evaluate appropriately an opinion from Plaintiff's treating physician. Additionally, Plaintiff contends that this matter should be remanded because the provision related to the Commissioner's removal is unconstitutional and because the ALJ's appointment was improper.

### IV. Standard of Review

A claimant has the burden of proving that he or she suffers from a disability, which is defined as a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. 20 C.F.R. §§ 404.1505; 416.905. The regulations require the Commissioner to evaluate each claim for benefits using a five-step sequential analysis. 20 C.F.R. §§ 404.1520; 416.920. The burden rests on the claimant through the first four steps to prove disability. Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016). If the claimant is successful at these

steps, then the burden shifts to the Commissioner to prove at step five that the claimant can perform other work. Mascio v. Colvin, 780 F.3d 632, 635 (4th Cir. 2015); Monroe, 826 F.3d at 180.

Under 42 U.S.C. § 405(g), judicial review of a final decision of the Commissioner denying disability benefits is limited to whether substantial evidence exists in the record as a whole to support the Commissioner's findings, and whether the Commissioner's final decision applies the proper legal standards. Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). When a federal district court reviews the Commissioner's decision, it does not "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). Accordingly, the issue before the court is not whether Plaintiff is disabled but, rather, whether the Commissioner's decision that he is not disabled is supported by substantial evidence in the record and based on the correct application of the law. Id.

## V. Discussion

### A. Consideration of Opinion Evidence

For applications filed on or after March 27, 2017, the Administration has changed how adjudicators assess medical opinions and prior administrative medical findings. See 82 Fed. Reg. 5844-01; 20 C.F.R. § 404.1520c(a)); 20 C.F.R.

§ 416.920c(a).[1] Specifically, an ALJ is now required to consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior administrative medical finding to be. 20 C.F.R. §§ 404.1520c(a)); 416.920c(a). In that regard, the regulations list numerous factors that are considered, as appropriate: supportability, consistency, relationship with the claimant, specialization, and "other factors" (such as familiarity with other evidence in the claim or an understanding of program policies and evidentiary requirements). Of these factors, "supportability" and "consistency" are the most important. See 20 C.F.R. §§ 404.1520c(a) & (c); 416.920c(a) & (c). "Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. Consistency is an external check that references evidence from other medical and nonmedical sources." Bright v. Saul, No. 1:19CV504, 2020 WL 4483008, at *2 (M.D.N.C. Aug. 4, 2020).

---

[1] The revised regulations define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review…in your current claim based on their review of the evidence in your case record." See 20 C.F.R. §§ 404.1513(a)(5); 416.913(a)(5). Prior administrative medical findings include state agency consultant findings regarding the severity of a claimant's symptoms, whether a claimant's impairments meet or medically equal a listing, and a claimant's residual functional capacity. Id.

Here, Plaintiff contends that the ALJ erred by failing to evaluate adequately the medical opinion of Dr. Paul Kim of Carolina Neurosurgery and Spine Associates, who completed a Physical Medical Source Statement on July 21, 2020 (the "MSS," AR 1632-1635). In the MSS, Dr. Kim noted that Plaintiff's symptoms included "significant loss of manual dexterity, LUE atrophy,[2] [and] myelopathic gait w/hypertension," that surgery was recommended and scheduled for September 28, 2020,[3] that Plaintiff was incapable of "even 'low stress' jobs," and that Plaintiff's symptoms were "constantly" severe enough to interfere with the "attention and concentration needed to perform even simple work tasks." AR 1632, 1633. Although the MSS refers to a clinical note that is purportedly attached, no such note appears in the record. See AR 1632, 1635.

In developing Plaintiff's RFC, the ALJ stated that the MSS was not persuasive because "Dr. Kim rendered this opinion 18 months after the claimant's date last insured" such that the opinion was "outside the period at issue in this case." AR 27. Plaintiff contends that this limited analysis of the MSS constitutes reversible error.

"To establish eligibility for Social Security disability benefits, a claimant must show that he became disabled before" his date last insured. Bird v.

---

[2] The undersigned presumes LUE means "left upper extremity."

[3] It does not appear that this surgery occurred in September. See AR 71 (noting that Dr. Kim was the neurosurgeon who was anticipating doing a "fusion surgery" "back in September before it was postponed").

Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). Evidence created after a claimant's date last insured may be considered when an "inference of linkage" exists between that evidence and the claimant's pre-DLI condition. Id. at 341. Where there is insufficient evidence supporting an inference that a claimant's post-DLI assessment is linked to pre-DLI condition, the ALJ is not required to consider the new assessment. Bird, 699 F.3d at 341 (citing Johnson v. Barnhart, 434 F.3d 650, 655–56 (4th Cir. 2005) (per curiam)). However, "retrospective consideration of evidence is appropriate when the record is not so persuasive as to rule out any linkage of the final condition of the claimant with his earlier symptoms." Bird, 699 F.3d at 341 (internal citations omitted); see also Martin v. Saul, No. 1:19-cv-286-MOC, 2020 WL 1914919, at *5 (W.D.N.C. April 20, 2020) ("Bird requires consideration of evidence created after the date last insured when that evidence permits an inference of linkage back to the claimant's condition as it existed before the date last insured").

Courts in this Circuit have found reversible error where an ALJ failed to consider evidence created after a plaintiff's date last insured when that evidence "relates to the time period prior to the plaintiff's date last insured." McBryde v. Berryhill, No. 7:16-CV-10-FL, 2017 WL 991724, at *8 (E.D.N.C. Feb. 21, 2017), *recommendation adopted*, 2017 WL 976932 (E.D.N.C. March 13, 2017) (recommending remand where a medical source statement completed

by claimant's treating endocrinologist almost four years after claimant's date last insured "expressly relate[d] back to the time period before plaintiff's date last insured") (citing Bird, 699 F.3d at 342; Moore v. Finch, 418 F.2d 1224, 1225 (4th Cir. 1969)); see also e.g., Krawcheck v. Saul, No. 7:18-CV-00161-FL, 2019 WL 5800296, at *5 (E.D.N.C. July 16, 2019), *recommendation adopted*, 2019 WL 3820103 (E.D.N.C. Aug. 14, 2019) (finding that the ALJ's discounting of the opinion of claimant's treating specialist as untimely was "unconvincing" where the specialist explicitly stated that his opinion related back to the relevant time period); Becker v. Saul, No. 1:19-cv-00149-FDW-DSC, 2020 WL 3076321 (W.D.N.C. June 10, 2020) (noting that findings set out in medical source statement rendered two years after DLI were not linked to claimant's pre-DLI condition).

Here, the ALJ noted that the MSS was completed by Dr. Kim eighteen months after Plaintiff's date last insured, AR 27, and the MSS itself does not expressly state whether Dr. Kim's opinions regarding Plaintiff's limitations relate to Plaintiff's abilities prior to or after Plaintiff's DLI.[4]

On the other hand, Plaintiff had been diagnosed with cervical disc disorder and had complained of a loss of dexterity prior to his DLI such that the functional limitations referenced in the MSS could be related to Plaintiff's

---

[4] The "clinic note" referenced in the MSS, which could provide an indication of the time period addressed in the MSS, is not attached to that document.

condition during the relevant period. See AR 20-21 (ALJ noting that Plaintiff testified as to hand numbness, loss of motor control, and problems with grip, as well as "problems staggering when he stood up"); AR 710 (July 18, 2018 treatment note including assessment of cervical disc disorder).

Further, it appears that Dr. Kim examined Plaintiff both prior to and after Plaintiff's date last insured. See AR 705-711 (July 18, 2018 treatment record reflecting that Dr. Kim saw Plaintiff as a "new patient;" Plaintiff complained of weakness to the bilateral upper extremities, numbness, and tingling; on physical exam Plaintiff exhibited "decreased strength to the bilateral upper extremities, including grip strength and movement" and gait instability; and Dr. Kim indicated Plaintiff's condition would not improve with "non-surgical management"); AR 1615-1619 (July 1, 2020 treatment record stating that Plaintiff reported his symptoms had significantly worsened, and Dr. Kim noted "severe cervical myelopathy which has progressed since his last office visit" as well as left hand atrophy).[5]

The Commissioner argues that the ALJ's failure to discuss the MSS more fully was harmless error because "the ALJ's review of the record as a whole included essentially the same findings" as those set out in the MSS such that

---

[5] The record indicates that Plaintiff saw Dr. Kim as a "new patient" on July 18, 2018, had a telemedicine appointment with Dr. Kim's office on April 2, 2020, and an in-person appointment on July 1, 2020. See AR 705-711; 1615. Accordingly, it appears that Dr. Kim is referring to the progression of Plaintiff's symptoms since July 2018.

9

the MSS was "cumulative." See Doc. 13 at 24-25. The Commissioner also contends that the ALJ considered other evidence indicating that Plaintiff had a normal range of motion in his hands and grip strength. See Doc. 13 at 25. The Court's review, however, is limited to the reasons articulated by the ALJ. See Patterson v. Bowen, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must … affirm the ALJ's decision only upon the reasons he gave"); Rivers v. Astrue, No. 4:11–01386–TER, 2012 WL 2590498, at *5 (D.S.C. Jul. 5, 2012) ("[T]he ALJ, not the Commissioner, must explain why a treating physician's opinion is discounted or rejected. By the Commissioner setting forth the reasons, it is a post-hoc rationalization, which the Court cannot consider"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (an ALJ must "build an accurate and logical bridge from the evidence to his conclusion" when assessing a claimant's RFC) (citing Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)); Mayberry v. Berryhill, No. 5:17-cv-175-GCM, 2018 WL 3543085, at *3 (W.D.N.C. July 23, 2018) ("A failure to provide an adequate explanation frustrates the ability of the Court to conduct meaningful review and determine whether the ALJ's decision is supported by substantial evidence").

Here, the ALJ did not find that the MSS was "cumulative" or less persuasive in light of other medical records. Rather, it appears that the ALJ's sole basis for discounting the MSS was the fact that it was generated after

Plaintiff's DLI. Accordingly, the undersigned will recommend remand on this basis.

### B. Plaintiff's Constitutional Challenges

#### 1. Removal Provisions

42 U.S.C. § 902(a)(3) provides that "[a]n individual serving in the office of Commissioner [of the Social Security Administration] may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office."

Citing Section 902(a)(3), Collins v. Yellen, 141 S.Ct. 1761, 210 L.Ed.2d 432 (2021), and Seila Law, LLC v. Consumer Financial Protection Bureau, 140 S.Ct. 2183, 207 L.Ed.2d 494 (2020), Plaintiff argues that the structure of the Social Security Administration is constitutionally invalid and therefore the ALJ's decision is void because it was not reviewable by anyone subject to removal at-will by the President. Doc. 11 at 7-20; see also 2021 WL 2981542 (Office of Legal Counsel Memorandum Opinion which concluded that the statutory removal restriction in 42 U.S.C. § 902(a)(3) is unenforceable).

However, arguments of this nature have been rejected by numerous courts. See e.g., Murray v. Kijakazi, No. 3:21-cv-489-MOC, 2022 WL 2252603, at *5 n. 1 (W.D.N.C. June 22, 2022) (explaining that "[t]his Court and many others have repeatedly rejected Social Security plaintiffs' claims that ALJ's

11

decisions are constitutionally defective based on a separation of powers argument," collecting cases, and stating that "the Court is not aware of any case holding to the contrary….") (emphasis in Murray); Osborne v. Kijakazi, 5:21-cv-9-MOC, 2021 WL 5890668, at *3 (W.N.D.C. Dec. 13, 2021) ("The Collins Court reasoned that the relevant agency officials were 'properly appointed' pursuant to a statute that exhibited 'no constitutional defect in the … method of appointment' and that 'the unlawfulness of [a] removal provision' does not strip [an official] of the power to undertake the other responsibilities of his office[.]'"); Chuenanan v. Commissioner of Social Security, No. 1:21-cv-00086-RJC, 2022 WL 1416421 (W.D.N.C. May 4, 2022); Watkins v. Kijakazi, 1:20-cv-00380-MR-WCM, 2022 WL 1101760 (W.D.N.C. Jan. 21, 2022), *recommendation adopted*, 2022 WL 822166 (W.D.N.C. March 18, 2022); see also Helms v. Commissioner of Social Security, No. 3:20-cv-589-MOC, 2021 WL 5710096, at *2 (W.D.N.C. Dec. 1, 2021) ("The Court finds that it is implausible that the Commissioner's protection from removal from office, whether constitutional or not, could have affected ALJ Goodson's decision or any other aspect of the administrative litigation in a material way"); Hutchens v. Kijakazi, No. 1:20CV1124, 2021 WL 5834409, at *11 (M.D.N.C. Dec. 9, 2021), *recommendation adopted*, (M.D.N.C. Jan. 5, 2022) ("Unlike Appointments Clause cases, where courts have found the very authority under which a government official has acted unconstitutional…the unconstitutional removal

provision at issue here did not impact then-Commissioner Saul's ability to carry out the duties of his office") (internal citations omitted); Brand v. Kijakazi, 575 F.Supp.3d 1265, 1274 (D. Nev. Dec. 10, 2021) (rejecting plaintiff's argument that President Biden's statements regarding Saul's firing evidenced a "strong possibility" of harm as "too conclusory, speculative, and attenuated").

### 2. Federal Vacancy Reform Act

Plaintiff also argues, under the Federal Vacancies Reform Act, that then-Acting Director Berryhill was not properly appointed at the time she ratified the appointment of the ALJ in this case on July 16, 2018, such that the ALJ's ratification was "in violation of the Appointments Clause…." Doc. 8 at 11.

In Edwards v. Commissioner of Social Security, No. 1:21-cv-00134-RJC, 2022 WL 3352298, at *4 (W.D.N.C. Aug. 12, 2022), a court in this district rejected this argument and explained:

> Plaintiff argues that Acting Director Berryhill ratified the appointment of the ALJ in this case without proper authority as it was after the 210-day limit established by Congress under 5 U.S.C. § 3346. "Under the Federal Vacancies Reform Act (FVRA), 5 U.S.C. § 3346(a)(1), even if Ms. Berryhill's initial eligibility to serve as Acting Commissioner previously expired, then-President Trump nominated Andrew Saul for Commissioner in April 2018, such that Ms. Berryhill once again was eligible to serve as Acting Commissioner. The FVRA incorporates a spring-back provision, which permits the acting officer to begin performing the functions and duties of the vacant office again upon the submissions of a nomination, even if the 210-day period expired before that

13

Case 5:21-cv-00145-MR-WCM   Document 15   Filed 01/10/23   Page 13 of 16

nomination was submitted." <u>Hutchens v. Kijakazi</u>, No. 1:20-CV-1124, 2021 WL 5834409, at *7 (M.D.N.C. Dec. 9, 2021). Here, Acting Director Berryhill ratified the appointment of the ALJ in this case on July 16, 2018, after President Trump nominated Mr. Saul for the position. This triggered the spring-back provision, and Acting Director Berryhill was properly serving at the time she ratified the ALJ's appointment.

Other courts have reached similar conclusions. <u>See</u> <u>Taylor v. Kijakazi</u>, No. 1:21CV648-JLW-WLO, 2022 WL 4668273, at *9 (M.D.N.C. Aug. 2, 2022) ("the undersigned agrees with the other judges from this Court, Circuit, and others who have considered this issue at considerable length and concluded that this appointment clause argument has no merit") (citing <u>Williams v. Kijakazi</u>, No. 1:21-CV-141-GCM, 2022 WL 2163008, at *2-4 (W.D.N.C. June 15, 2022)), *recommendation adopted*, 2022 WL 4621418 (M.D.N.C. Sept. 30, 2022); <u>see also</u> <u>Black v. Kijakazi</u>, No. 1:21-CV-322-KDB, 2022 WL 2977340, at *3 (W.D.N.C. July 27, 2022) (finding that acting Commissioner Berryhill was validly serving under the Federal Vacancies Reform Act).

VI. Recommendation

The undersigned respectfully **RECOMMENDS** that Plaintiff's Motion for Summary Judgment (Doc. 10) be **GRANTED**, and that the Commissioner's Motion for Summary Judgment (Doc. 12) be **DENIED.**

Signed: January 10, 2023

_W. Carleton Metcalf_
W. Carleton Metcalf
United States Magistrate Judge

15

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See Thomas v. Arn, 474 U.S. 140, 140 (1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).